IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| HEADWATER PARTNERS II LLC, | § § § | |
| *Plaintiff,* | § § § | CIVIL ACTION NO. 2:24-cv-00015-JRG-RSP (Lead Case) |
| v. | § § | |
| T-MOBILE US, INC. *et al.* and SPRINT CORP., | § § § § | |
| *Defendants.* | § § § | |

**ORDER REGARDING E-DISCOVERY**

The Court ORDERS as follows:

1. This order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This order may be modified in the Court's discretion or by agreement of the parties. If the parties cannot resolve their disagreements regarding any modifications, the parties shall submit their competing proposals and a summary of their dispute to the Court for resolution.

3. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

4. Absent a showing of good cause, general ESI production requests under Federal Rules of Civil Procedure 34 and 45, or in compliance with a mandatory disclosure requirement of this Court, shall not include metadata. However, to the extent such metadata is applicable to an individual item and is already within the producing Party's possession, custody, or control, the following fields shall generally be included in a production, if such fields exist:

    A. Title;

    B.    Filename;

    C.    Creation date and time;

    D.    Modification date and time;

    E.    Author;

    F.    Subject line;

    G.    Distribution list (*e.g.*, "To," "Cc," and "Bcc" fields);

    H.    Date and time sent;

    I.    Date and time received;

    J.    Beginning Document Number;

    K.    Ending Document Number;

    L.    BegAttach (the Beginning Document Number of the parent document);

    M.    EndAttach (the Ending Document Number of the last attachment);

    N.    FileExt (the extension of the filename, e.g., "DOC" for an MS Word document);

    O.    Filepath (for loose electronic files this should be the filepath to the document location in the original environment. However, for emails this should be the internal folderpath where the email was stored, e.g., Doe, Jane.pst\inbox);

5.    Absent agreement of the parties or further order of this court, the following parameters shall apply to ESI production:

    A.    **General Document Image Format**. Each electronic document shall be produced in single-page Tagged Image File Format ("TIFF") format. Each electronic document shall be single page and named with a unique production number followed by the appropriate file extension. If a document contains attachments (e.g., an attachment to an email), such

2

attachments shall be separately produced as electronic documents. Load files shall be provided to indicate the location of produced electronic documents, identify any attachments to electronic documents through unitization information, and identify any metadata of produced electronic documents.

B. **Email Threading:** Where multiple email messages are part of a single "thread," a Party is only required to produce the most inclusive message for which no claim of privilege is made, and need not produce earlier, less inclusive email messages that are fully contained, including attachments, within the most inclusive email message for which no claim of privilege is made. For the avoidance of doubt, if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced.

C. **Text-Searchable Documents**. If a party's documents exist in any text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the producing party's counsel, then such documents shall be produced in the same text-searchable format at no cost to the receiving party.

D. **Footer**. Each page of any document produced in electronic image format shall contain a footer with a sequentially ascending production number.

E. **Native Files**. Documents that would not be reasonably legible in image or near-native format, and documents that would be incomplete in image or near-native format, should be produced as native files. Examples of such

3

        documents include, without limitation, spreadsheets of more than a single page and documents, including for example PowerPoint files, containing tracked changes, comments, or notes that would not be visible in an image format. A party that receives a document produced in an image format may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format.

F. **Illegible Documents**. The Parties will accommodate reasonable requests for production of legible copies of specific documents previously produced as a JPG/TIFF file.

G. **No Backup Restoration Required.** Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

H. **Additional Non-Discoverable Documents**: Consistent with the proportionality standard, and absent a party's specific written notice for good cause, the following categories of ESI are presumed to be inaccessible and not discoverable:

    i. ESI deleted in the normal course of business before the time a preservation obligation in this matter came into effect;

    ii. Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

    iii. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the

4

        operating system;

    iv.    On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

    v.    Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

    vi.    Electronic data (e.g., call logs, email, calendars, contact data, notes, etc.) sent to or from mobile devices (e.g., iPhones, iPads, Android devices, Blackberry devices, etc.), if a copy of such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);

    vii.    Voicemails, text messages, and instant messages sent to/received by mobile devices, PDAs, VOIP phones, traditional phones, and/or mobile phones.

    viii.    PDAs and mobile phones are deemed not reasonably accessible and need not be collected and preserved;[1]

    ix.    Server, system, network, or software application logs;

    x.    Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

    xi.    Data or documents on external media and thumb drives; provided that such devices are not used in the ordinary course of business or a copy of information on such devices is routinely saved or is available elsewhere;

---

[1] This provision is intended to address devices used by the parties and others subject to production obligations, and is not intended to otherwise impact discovery obligations with respect to accused instrumentalities.

        xii.    Data and documents hosted on personal social media accounts (as opposed to corporate accounts), including Twitter, Facebook, etc.

6. General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this Court, shall not include e-mail or other forms of electronic correspondence (collectively "e-mail"). To obtain e-mail, parties must propound specific e-mail production requests.

7. E-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures, a specific listing of likely e-mail custodians, a specific identification[2] of the twelve (12) most significant listed e-mail custodians, to the extent such custodians exist, in view of the pleaded claims and defenses, infringement contentions and accompanying documents pursuant to P.R. 3-1 and 3-2, invalidity contentions and accompanying documents pursuant to P.R. 3-3 and 3-4, and preliminary information relevant to damages. The exchange of this information shall occur at the time required under the Federal Rules of Civil Procedure, Local Rules, or by order of the court.

8. E-mail production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame. Each requesting party shall limit its e-mail production requests to a total of eight (8) custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case.

9. Each requesting party shall limit its e-mail production requests to a total of eight (8) search terms per custodian per party. The parties may jointly agree to modify this limit without the

---

[2] A "specific identification" requires a short description of why the custodian is believed to be significant.

Court's leave. The Court shall consider contested requests for additional or fewer search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. If a party objects to a search term(s) on the ground that it would be too burdensome to produce all documents that hit on that term, the party shall produce a hit count to the requesting party identifying the hit counts per search term where possible. If a combination of search terms for a given custodian results in an excessive number of hits, the parties will confer in good faith to limit the terms and resolve disputes. If the parties are unable to reach an agreement to limit the terms, either party may seek relief from the Court.

10. For any email custodians located in the European Union or the United Kingdom, the Parties will confer about an appropriate agreed upon method to filter the email search results to exclude and/or redact hits that contain sensitive information, to comply with obligations under the GDPR and/or the UK's Data Protection Act of 2018. Nothing in this Order shall require any party to violate the terms of the GDPR and/or the UK's Data Protection Act of 2018 or any other privacy law or regulation that may be applicable to a given custodian.

11. The parties shall endeavor to produce email attachments sequentially after the parent email.

12. The parties further agree that, unless good cause is shown, the parties subject to this order need not search for or produce e-mail created after the filing of the complaint.

13. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

14. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

15. Except as expressly stated, nothing in this order affects the parties' discovery obligations under the Federal or Local Rules.

**SIGNED this 28th day of May, 2024.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE